| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>Phone: (303) 606-2300<br><br>**Plaintiff:**<br>JAYMEE BARRINGTON,<br>v.<br><br>**Defendant:**<br>UNITED AIRLINES, INC. | DATE FILED: February 15, 2021 4:24 PM<br>FILING ID: 9EE19CAFFA70E<br>CASE NUMBER: 2021CV30562<br><br><br><br><br><br>▲ COURT USE ONLY ▲ |
| John R. Olsen, Reg. No. 9475<br>357 S. McCaslin Blvd.<br>Louisville, CO 80027<br>(303 828-5220<br>email: olsenbrown@comcast.net<br>Attorney for Plaintiff Jaymee Barrington | **Case Number:**<br><br>**Division:** |
| COMPLAINT AND JURY DEMAND | |

PLAINTIFF JAYMEE BARRINGTON, by her attorney, John R. Olsen, states for her Complaint and Jury Demand as follows:

## JURISDICTION

1.  The Colorado Constitution, Art. VI, § 9, empowers the District Court as a trial court of record with general jurisdiction and original jurisdiction over all civil

1

cases except as limited by statute.  Plaintiff's damages exceed any jurisdictional

requirement for this court.

## VENUE

2.  Venue is proper in Denver County, Colorado, pursuant to C.R.C.P.

98(c) because one or more of the defendant's acts complained of -- or all of them

-- occurred therein.

## NATURE OF CLAIMS

3.  Plaintiff invokes the jurisdiction of the court pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and C.R.S. § 24-34-301 *et seq*.,

to remedy illegal gender discrimination and retaliation by the defendant's blanket,

undifferentiated and general order and policy that employees are forbidden to

discuss such matters and/or the underlying facts, or adverse treatment, circumstances

and/or investigations with anyone else both while workers are employed there, and

after they no longer work at the corporation.  Thus, victims, including plaintiff, were

and are denied their right to gather witnesses and evidence to support their claims or

defend against company accusations.  Plaintiff seeks a declaratory judgment and

permanent injunctive relief to that effect (and effective in the State of Colorado and

throughout the United States) as to said violation of the law, as well as all statutory

relief as to all statutes described in this Complaint (including as described below).

2

Said misconduct constitutes an illegal mechanism of discrimination and retaliation.

4.  Plaintiff seeks a declaration and permanent injunction, effective in Colorado and throughout the United States, forbidding and striking defendant's blanket, undifferentiated and general order and policy that employees are forbidden to discuss any and all such matters and/or the underlying facts, or adverse treatment, circumstances and/or investigations with anyone else both while workers are employed there, and after.  This includes as to victims, including plaintiff, being denied their right to gather witnesses and evidence to support their claims of discrimination/retaliation or adverse treatment, or defend against company accusations.

5.  Plaintiff invokes the jurisdiction of the court pursuant to the Railway Labor Act, 45 U.S.C. § 151 seeking a declaration and permanent injunctive relief that the following is illegal and a violation of requirements relating to working conditions, and enjoining such misconduct by the company:  The defendant's blanket, undifferentiated and general order and policy that employees were and are forbidden to discuss matters under investigation or that have been investigated (including as relate to discrimination, retaliation or adverse treatment), and/or the underlying facts, circumstances and/or investigations with others both while workers are employed there, and after they no longer work at the corporation. Plaintiff seeks a declaratory judgment and permanent injunctive relief to that effect,

Exhibit A
Notice of Removal

and throughout the United States as well as damages and remedies provided by the statute.

6.  Plaintiff seeks an Order of the Court that the defendant's written and oral orders and policy of silencing victims of mistreatment including but not limited to discrimination, retaliation, adverse treatment and actions against them by the defendant -- by generally ordering that they not discuss the matter and/or its facts and circumstances with others (both while workers are employed there, and after they no longer work there) -- violates C.R.S. § 24-34-402.5.  Plaintiff seeks a declaratory judgment and permanent injunctive relief to that effect in the State of Colorado, as well as damages and remedies provided by the statute.

7.  Plaintiff invokes the jurisdiction of the court for a determination that the defendant's written and oral policy of silencing victims of mistreatment including but not limited to as relates to discrimination, retaliation and/or adverse treatment -- by blanket ordering that they not discuss such investigations underway or completed, and/or their related facts and circumstances with others (both while workers and witnesses are employed there, and after they no longer work there) is a violation of public policy throughout the State of Colorado and the United States.

8.  Plaintiff also seeks a determination that the defendant uses other techniques and methods of illegal discrimination and retaliation, including unfairly delaying internal investigations and appeals that are promised to the employees so

that they "die on th vine," and declining to provide witness names to victims bringing complaints.

9.  Plaintiff seeks all available relief, including award of attorneys' fees and costs, for the defendant's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq;* the Railway Labor Act, 45 U.S.C. § 151; and C.R.S. § 24-34-301 *et seq.* as described above, and for breach of the policies of the State of Colorado and the United States as described herein.

## PARTIES

10.  Plaintiff is a resident of Arapahoe County, State of Colorado.

11.  Defendant United Airlines, Inc. ["the defendant" or "defendant corporation"] is a corporation qualified to do and doing business in the State of Colorado, with offices at 8900 Pena Blvd., Denver, Colorado 80249.  The defendant has continuously employed more than 500 employees and been engaged in interstate commerce.  The defendant is engaged in airline carrier services.

12.  The defendant is otherwise an employer within the meaning of federal and Colorado law cited above and below, and also is a common carrier by air.

## ADMINISTRATIVE PROCEDURES

13.  Plaintiff properly filed her charge of discrimination/retaliation with the U.S. Equal Employment Opportunity Commission [EEOC] and the Colorado Civil Rights Division [CCRD].

14.  Notice of Right to Sue was issued by the EEOC on January 5, 2021.

5

15.  This Complaint and Jury Demand are filed within 90 days thereof.

ALLEGATIONS

16.  The above paragraphs of this Complaint are adopted as part of the Allegations and Claims herein:

**A.  Historic Background**

17.  Plaintiff, a female and member of management at the defendant, has opposed employee mistreatment, discrimination and retaliation at the defendant for many years and previously won a federal jury verdict in Denver against the defendant for illegal retaliation in violation of statutory law (which wrongdoing she believes continues to the present, as will be discussed *infra*).

18.  Plaintiff was first employed by the defendant on or about October 19, 1987. Her job title was Customer Service Representative.

19.  She was promoted to management and the job of "Supervisor -- Airport Operations" in Ramp Service or "Below the Wing Operations."

20.  Plaintiff always performed her job well.

21.  Throughout her more than thirty years of service and throughout this fact pattern, plaintiff's job performance has been rated as meeting all expectations, or better.

22.  However, plaintiff observed over the same span of time that the defendant discriminates and retaliates against women and, worse, devises methods of suppressing the complaints of females in order to stifle their claims.

**Exhibit A**
**Notice of Removal**

23.  The defendant has a policy of requiring supervisors and managers to report discrimination when they observe it, but said policy has been ignored or sidestepped for literally decades.

24.  Working for the defendant had been historically and illegally considered to be a man's role, and the defendant has been woefully slow to change.  Instead, certain managers have continued to suppress, discriminate and retaliate against women.

25.  Plaintiff believed it important not to cower but, instead, to complain when she observed discrimination.  Plaintiff believed that females were treated as "second-class citizens," as compared to males at the defendant corporation.

26.  Plaintiff observed that performance evaluations for females were not being completed in a timely fashion, as they were for males.  Then, on or about May 20, 2012, plaintiff complained to the defendant's headquarters Human Resources Office in Chicago about the occurrence of harassment of a co-worker and hostile work environment.

27.  Plaintiff reported that the matter of co-worker harassment and hostile work environment set forth above had not been handled properly by defendant's management in Denver, which should have looked into and remedied the problem.

28.  Plaintiff believed that had she been a male, the defendant would have responded to her complaint in a meaningful fashion -- but it did not.

29.  Moreover, plaintiff believed that performance evaluations for women were unfairly downgraded because of their gender.

30.  Plaintiff feared retaliation for her complaints.

31.  During the first week of July 2012, she was questioned by management

7

regarding her prior complaint to the defendant's headquarters Human Resources Office in Chicago regarding the occurrence of harassment of a co-worker and hostile work environment, as set forth above.

32. As a result, plaintiff was told by management in Denver that she "should reconsider" her position as supervisor (i.e. in management) since she "was unable to conform to" United's way of managing.

33. Plaintiff considered said statements to be threats to terminate her, remove her from management, or otherwise retaliate against her, even though she had followed company policies and procedures in every respect.

34. Getting barely a second glance from company management, on or about September 4, 2012, plaintiff complained to the EEOC regarding the sex discrimination and retaliation she observed and suffered at the defendant. More specifically, she expressed the belief that she was being retaliated against and being treated differently because of her sex, stemming from her prior complaints. She labeled her discrimination charge "Gender/Retaliation for contacting HR."

35. Plaintiff did not cower. On or about October 1 or 2, 2012, plaintiff sent an email to a high level manager, Kenneth Brown, Director of Ramp and Cargo Operations in Denver. In it she complained that an upgrade position that she sought -- "upgrade Area Manager" -- "is offered solely to men." She complained that the "upgrades" "are **all** men." [bold type in the original].

36. This communication and others described above constituted complaints of sex discrimination and were protected -- protected from retaliation -- under federal and

**Exhibit A**
**Notice of Removal**

Colorado law.

37.  On or about December 16, 2012, plaintiff wrote to Brown complaining about retaliation against her (including that her personnel file had been tampered with and the bid process altered to prevent her from getting a promotion).

38.  On or about February 28, 2013, Brown refused to promote plaintiff to an upgrade Area Manager position.  He did so on other occasions as well.

39.  On or about February 28, 2013, Brown also issued plaintiff a failing performance evaluation (on her 2012 Year-End Rating), which performance evaluation was false.

40.  Brown gave plaintiff the lowest possible score in every performance category.

41.  This was a false appraisal and in stark contrast to certain of plaintiff's prior performance scores, which showed she met or exceeded the defendant's expectations at all times.  Brown's evaluation was ludicrously false and a classic example of retaliation against her.

42.  On or about April 2, 2013, plaintiff was told by Tonya Patterson, a high-level HR manager, in a meeting with Patterson and Brown, that, "you know people get fired for writing letters."  Plaintiff believed this was a threat to silence her complaints of illegal and wrongful misconduct within the corporation.

43.  On or about May 14, 2013, plaintiff filed an amended charge of discrimination and retaliation with the EEOC and the CCRD.  She re-stated her prior claims of discrimination and retaliation and noted that the defendant committed sex discrimination by disciplining and terminating female employees who complained about discrimination

Exhibit A
Notice of Removal

"while turning a blind eye toward male employees who have committed serious violations of company policy, and even promoting and/or rehiring said male employees."

44.  On or about June 6, 2014, the CCRD issued a ten-page "Determination" that the defendant had, in the above-described mistreatment of plaintiff, violated C.R.S. § 24-34-301 *et seq*., as amended, which is Colorado's state law forbidding sex discrimination and retaliation.

45.  On or about September 30, 2014, the EEOC issued a "Letter of Determination" in which it determined that "there is reasonable cause to believe that there is a violation of Title VII in that on or about February 28, 2013, [United Air Lines] refused to promote [Jaymee Barrington] to an Upgrade Area Manager position and issued her a failing performance review because of her sex (female) and in retaliation for engaging in a protected activity."

46.  Plaintiff believes that as a result of her citing wrongdoing at the defendant, including discrimination and retaliation, her status had now become one of a *persona non grata* at the company.  Note: It has remained so ever since, as will be discussed *infra*.

47.  In 2015, plaintiff brought a federal lawsuit in Denver against the defendant based in part on the above-described discriminatory and retaliatory actions against her [Case No.15-CV-00590]. The initial trial was held on June 20-24, 2016, and the jury rendered a verdict for United Airlines.  Plaintiff then appealed the adverse judgment to the United States Court of Appeals for the Tenth Circuit [Case

Exhibit A
Notice of Removal

No. 16-1292] -- and she prevailed.  The case was remanded for a second trial.

48.  In a second jury trial, on December 11-15, 2017, a jury of ten found in plaintiff's favor on her claim of retaliation.  On top of the verdict finding illegal retaliation, she won more than $100,000 in attorney's fees.

49.  Even more far-reaching, plaintiff's victory at trial established a legal principle critical to those victims seeking to prove discrimination/retaliation in the face of the employer's bogus explanations for its mistreatment of victims.  The United States Court of Appeals for the Tenth Circuit found that the trial court had fatally erred when it declined to give the jury a pretext instruction.

50.  Said pretext jury instruction would have allowed the jury to find that if an employer presented a false reason for its discrimination and/or retaliation against the employee, then the jury could take that evasion as evidence of illegal discrimination/retaliation, and find for the victim.

51.  The United States Court of Appeals for the Tenth Circuit ruled that failure to give the jury a pretext instruction was reversible error.

52.  Said decision "changed the landscape" at United Airlines, which thereafter could not rely upon its *ex post facto* dirt-digging and its alleged (but false) rationale for negative actions against an employee who complained about discrimination/retaliation.

53.  The jury in plaintiff's trial implicitly found that the company's alleged

Exhibit A
Notice of Removal

justification for actions against plaintiff was false -- and said falsehood constituted evidence of illegal retaliation under federal statutory law.

54.  Said far-reaching legal precedent further cemented plaintiff's position as a *persona non grata* at the defendant.

55.  Said far-reaching legal precedent further guaranteed that plaintiff would remained mired in her position, with no chance of promotion, for the remainder of her career at the defendant.

**B.  Recent Events.**

56.  For reasons of sex discrimination and retaliation, the defendant took more recent actions against plaintiff:

57.  In October 2018, plaintiff applied for the position of Senior Manager -- Airport Operations Customer Service.  She met the requirements for the position.

58.  Plaintiff was denied the promotion upon the company's false assertion that other candidates had more competitive experience.  The real reason was that plaintiff was a *persona non grata* at the corporation because of her prior complaints of discrimination and retaliation, who would never again be fairly considered for promotion.  This constituted illegal discrimination/retaliation.

59.  While plaintiff was denied the promotion in 2018, the corporation did not respond to the EEOC until March 20, 2020, about a year later.  This is how the company buries complaints of discrimination/retaliation, causing them to "die on the

12

vine."

60.  In May 2018, plaintiff applied for an Area Manager position.  She was qualified for the position but the job went to another because, according to the company, four others had been rated in their performance higher than plaintiff.  The four others were all males.  Plaintiff's performance ratings had regularly been falsely skewed lower, because she was a *persona  non grata* for reasons of discrimination and retaliation, as discussed *supra*.  Again, the company did not respond to the EEOC for about one year.

61.  The corporation does not conduct fair investigations of complaints of discrimination.  Instead, it ignores, pooh-poohs or buries them.

62.  In August 2018, plaintiff applied for the job of Senior Supervisor -- Airport Operations Customer Service.  She was denied the job upon the assertion that the job was only open to employees already in the Customer Service Department.  Plaintiff had worked in Customer Service at United Airlines for more than 23 years.

63.  The defendant's management wondered suspiciously how plaintiff had even learned of the opening.  Apparently she was not supposed to know about it.

64.  Plaintiff was not fairly considered for the job of Senior Supervisor because she was a *persona non grata* for reasons of discrimination and retaliation, as discussed *supra*.  Again, the company did not respond to the EEOC for about one

year.

65.  In its response to the EEOC, the corporation did not discuss plaintiff's comparative superior qualifications for the Senior Supervisor job.  Instead, it declared that she was not going to get the job because it was an "internal posting." This was an illogical rationale and demonstrated a method the company used to discriminate/retaliate against employees who complained about discrimination/retaliation.

66.  In October and November 2018, plaintiff was denied fair consideration for any one of three job openings as Senior Supervisor -- Airport Operations Ramp Service (where she had already been working as a Supervisor for many years).  The company claimed during interviews she scored lower than others, all men.  This was a false rationale that ignored the prior performance of plaintiff for years and demonstrated a bogus method -- cherry-picking isolated alleged reasoning -- that the company used to retaliate against employees who complained about discrimination/retaliation.  Again, the company did not respond to the EEOC for about a year.

67.  In sum, and for reasons of discrimination and retaliation, plaintiff was denied fair consideration for promotions to Senior Supervisor -- Airport Operations Customer Service; Senior Supervisor -- Airport Operations Ramp Services; Senior Supervisor -- Airport Operations; Area Manager -- Hub Operations; and for

14

promotions given to employees who had not complained about discrimination: Leelan Mehuela, Doug McCuen, Gino Reveles, Mimi Tiedemann, John Arkin, Darrel Morrison, Jacob Chong, and Michael Turcotte.

68.  Company rationales, if any, for the above actions against plaintiff were pretextual in that the true reasons for failure to fairly consider her were that she was considered to be a *persona non rata* within the company, as discussed in this Complaint.

69.  All through the above-described circumstances, plaintiff had been rated as a valued employee who achieved expectations -- for five years in a row.  Her qualifications were ignored because this is a mechanism by which the corporation ends advancement of employees who have dared to complain about discrimination/retaliation.

70.  United Airlines falsely claims that the process for promotions is open and competitive.  This is false.  Instead, the company secretly grooms managers for promotion and raises, pre-selects them and then pretends there is an open process, when there is not.

71.  This process is done in secret and freezes out those supervisors who have complained about discrimination/retaliation, including plaintiff.  This is how she has been retaliated against and designated as a *persona non grata*.  As a result, she will be held in check for the remainder of her career.  Moreover, all victims will be

Exhibit A
Notice of Removal

scared off and will remain silent in exposing the truth.

### C. Further adverse action.

72.  On or about December 1, 2018, plaintiff was given a "Documented Verbal Warning" for allegedly speaking disrespectfully during a briefing.  In addition, she was accused of being nonresponsive when asked about the accusation. Both charges were false.  She had never done such a thing in working more than thirty years at the defendant.

73.  In late 2019, plaintiff complained about retaliation and harassment as related to the false "Documented Verbal Warning" and surrounding facts.

74.  The company announced that it would conduct an investigation, and, ultimately, on or about April 2, 2020, the company announced that the investigation had been completed, and United Airlines cleared itself because the "Documented Verbal Warning" was allegedly justified.

75.  In so doing, the corporation ignored or discounted plaintiff's side of the story, as plaintiff had done her job in the same mode of communication as hundreds, if not thousands of male employees (and yet the males had not been disciplined for such alleged conduct).

76.  On information and belief, it is rare, if not unheard of, for the corporation to find in favor of an employee in such a discrimination/retaliation investigation.

Exhibit A
Notice of Removal

77.  On information and belief, it is rare, if not unheard of, for an employee to prevail in any internal appeal in Denver.

78.  Bogus investigations and abuse of the appeal process are mechanisms used by the corporation to bury complainants and their complaints of discrimination/retaliation.

79.  The rationale of the defendant corporation for the above actions against plaintiff cited in this Complaint were pretexts for discrimination and retaliation and constituted evidence thereof.

**D.  Illegal Orders to Not Speak With Anyone Else.**

80.  United Airlines, Inc. maintains a formal policy that requires employees who have complained about discrimination/retaliation or other adverse treatment to remain silent as to said complaints and underlying facts in perpetuity -- even after all investigations are completed and the employees no longer work at the airline.

81.  Said policy is described in United Airlines' policy manual, called the "Working Together Guidelines."

82.  United Airlines required employees to sign a confidentiality agreement that concluded as follows: "If I fail to maintain the confidentiality set forth above, I can be subject to discipline."

83.  In the case of *Wolff v. United Airlines*, Case No. 20-1119 (10th Cir.

Exhibit A
Notice of Removal

2020), the corporation instructed Eric Wolff that he was forbidden to speak with anyone else about his claims and defenses.  He had been fired.  The version of the United Airlines "Working Together Guidelines" submitted by the defense in said litigation stated, in part, that, "All employees are asked to keep all information relating to the investigation confidential, both while the investigation is on-going and after it has concluded."

84.  In the latest version of the "Working Together Guidelines," dated August 2019, United Airlines published a similar confidentiality order as to all employees, which order is entitled, "Confidential Investigation and corrective action."  The policy states, in part, that, "When you're part of a confidential investigation, we need you to keep the information and discussions about the investigation to yourself -- both while the investigation is underway and after it's completed."

85.  Said policy has been announced, published and implemented by United Airlines for many years.  A prior version, published in the May 2016 version of the "Working Together Guidelines," states, in part, that, "All employees are asked to keep all information relating to the investigation confidential, both while the investigation is on-going and after it has concluded."

86.  The defendant has not established nor stated a particular need for such an order in any specific case or specific fact pattern nor as relates to any

Exhibit A
Notice of Removal

employee's complaint.  The defendant has proffered no reason for issuing such

an order and policy.  Thus, again, it is undifferentiated.

87.  It is a blanket undifferentiated corporate order in all investigations.

The company has never stated otherwise nor said any specific investigation can

be talked about with others, even if the employee is gathering evidence of

discrimination, retaliation or adverse treatment.

88.  Thus, employees, including plaintiff, have had their hands tied and

cannot gather witnesses and supporting evidence to expose discrimination and

retaliation at the company as well as other adverse treatment -- or to prove their

own cases and/or defend against the company's dirt-digging and errant, false and

pretextual accusations.

89.  The ability of a victim, including plaintiff, to speak with others about

the existence of discrimination/retaliation and other adverse treatment within a

company (or even with persons outside the company) is "protected opposition"

to discrimination and retaliation as set forth in the federal and state statutes

described in this Complaint.  Such "protected opposition" may not be forbidden,

as a matter of law.

90.  The corporation's policies and commands described in this Complaint

are applicable, according to the defendant, not just to current employees, but to

those who no longer work at the company, such as those who have been fired or

been forced to resign, or who have resigned during or following false and
pretextual investigations.

91.  Such a policy and such directives constitute mechanisms of
discrimination and retaliation forbidden by federal and Colorado law, including
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and C.R.S. §
24-34-301 *et seq*.

92.  Such state and national prohibitions are well expressed or implied in
specific, non-generalized statutes and common understanding, as set forth in this
Complaint.  Plaintiff asks this court to strike and enjoin said policies and
directives in the State of Colorado and the United States, and award damages.

**E.  Two other mechanisms of illegal discrimination/retaliation**.

93.  The above-described method of stifling investigation of the truth
(silencing employees from discussing discrimination/retaliation and adverse
treatment, including to gather witnesses and evidence) is coupled with a second
method used by United Airlines to get away with illegal
discrimination/retaliation, namely to stall investigations for as long as possible.
By the time of alleged completion thereof, which can take months and even more
than a year, all evidence is dissipated or deleted by loss of memory and records,
and witnesses are too frightened to come forward and speak truthfully -- plus
they have been forbidden to speak with anyone else about the facts.

Exhibit A
Notice of Removal

94.  And there is a third mechanism used by United Airlines to stifle employees who believe they have been discriminated or retaliated against, namely to refuse to disclose witness names, even when the company is accusing the employee of some alleged misconduct.

95.  On April 7, 2020, a manager in corporate security sent an email to plaintiff refusing to provide the names of pertinent witnesses.  Molly Driscoll stated the policy, which doubly stifles the ability of employees to defend themselves or gather witnesses and information related to discrimination/retaliation or adverse treatment.  Driscoll:  "As I previously explained, the investigation is confidential and I will not provide the names or statements of any witness."

96.  Said silencing coupled with the inordinate length of alleged investigations and the company's refusal to disclose witness names works to prevent exposure of patterns of discrimination/retaliation and adverse treatment at the company.

97.  The above-described policies, mechanisms and commands constitute violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and Colorado statutory law (C.R.S. § 24-34-301 *et seq*.).

98.  Moreover, the defendant persistently and directly warns employees of the confidentiality policy that silences employees and eliminates their ability to

Exhibit A
Notice of Removal

gather witnesses and evidence.

99. On or about April 2, 2020, Driscoll and HR Manager Jennifer Rooney warned plaintiff regarding the above-described policy of confidentiality in a telephone conference. Then in an email on the same day, the company wrote to plaintiff, "In closing, please be reminded of the importance of confidentiality that we discussed during this process."

100. What was discussed, in so many words, was that plaintiff was forbidden to discuss the topic with anyone.

101. The warning to plaintiff was the direct result of a blanket undifferentiated Order in all investigations, without limitation or specific exceptions. The company has never stated otherwise nor said any investigations can be talked about with others, even if the employee is gathering evidence of discrimination, retaliation or adverse treatment.

102. Indeed, the history of issuing victims such warnings has been egregious. On or about December 10, 2019, plaintiff was given the same warning again, by Driscoll and Rooney.

103. In August 2019, plaintiff was warned about the policy of silence by Ed Eget, HR Manager.

104. Eget, the top HR manager in Denver, had previously issued the same warning to plaintiff on March 26, 2019, and had written to her on January 29,

Exhibit A
Notice of Removal

2019:  "You and I also discussed United's policy on confidentiality regarding Company investigations."

105.  On or about October 15, 2019, plaintiff was warned again [in the presence of management by Driscoll, Rooney, Diaz (Ramp Manager) and Cindy Seffair (HR director)] to remain silent relating to the false verbal warning plaintiff had been given, as described *supra*.  Thus, her hands were tied and she was essentially forbidden to defend against it.

**F.  Harm to Plaintiff.**

106.  Plaintiff's ability to defend against the "Documented Verbal Warning" was thus destroyed by the corporation's policy and warnings of silencing victims and witnesses.  Said "Documented Verbal Warning" was a false attack on plaintiff's employment record that had the impact of further destroying her chances of advancement.

107.  The above-described policies and warnings were designed by the defendant to frighten plaintiff against discussing her observations of discrimination/retaliation and adverse treatment with anyone.

108.  And the above-described policies and warnings worked, as plaintiff was halted in her ability to gather witnesses and evidence as to discrimination, retaliation and other adverse treatment of employees at the corporation, including against her.

Exhibit A
Notice of Removal

109.  She was frightened from contacting witnesses with regard to accusations by the corporation against her.

110.  On information and belief, fellow employees were frightened by the policies and warning and were hesitant to discuss such matters with plaintiff as she considered trying to gather witness and evidence.  Thus, witnesses were silenced.

111.  Moreover, plaintiff was in constant fear of communicating with fellow employees in a manner that the corporation could construe as being violative of the above-described policy of silencing employees.

112.  She was fearful that she could be fired at any moment if she were perceived to have violated the policy of silencing described *supra*.

113.  The effect of the above has been to limit plaintiff's ability to bring her claims of discrimination, retaliation and adverse treatment, and her ability to defend against the corporation's accusations against her.  Thus, were it not for the impact of the above policies and warnings, she would have prevailed in her claims and been able to defend against accusations against her by the corporation.  Thus, she was denied the fair chance to be promoted and to earn additional compensation at the defendant.  Thus she was denied income.

114.  The effect of the above upon plaintiff has also been to cause her emotional pain, suffering, mental anguish, and loss of enjoyment of life.

Exhibit A
Notice of Removal

### G.  Violations of national and Colorado policy.

115.  The following laws express or imply a policy of the United States and the State of Colorado which policy forbids the silencing of employees, former employees and witnesses as described in this Complaint:  Title VII of the Civil Rights Act of 1964, 42  U.S.C. § 2000e.; the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (as an unfair labor practice); and C.R.S. § 24-34-301 *et seq.*

116.  Likewise, the National Labor Relations Act (NLRA) expresses or implies a policy of the United States which policy forbids the silencing of witnesses as described in this Complaint:  The NLRA was passed in 1935, and later amended by the Labor Management Relations Act (LMRA), also known as the Taft-Hartley Act, in 1947.

117.  The NLRA's protections extend to employees who, although not affiliated with a union, engage in concerted, protected activity. Concerted, protected activity is activity engaged in by one or more employees with the intention of improving the terms and conditions of employment of all employees.  Again, the NLRA expresses or implies the illegality of forbidding the silencing of employees, former employees and witnesses as described in this Complaint.

118.  The defendant violated the policies of the United States and State of Colorado by the aforesaid actions in silencing employees, including plaintiff, former employees, and witnesses and in those related mechanisms (delaying investigations

Exhibit A
Notice of Removal

and denying the names of witnesses) as described in this Complaint.

119.  The National Labor Relations Board (NLRB) announced in a comparable fact pattern that corporate confidentiality requirements relating to internal investigations violated the National Labor Relations Act.  *See*, *Banner Health System v. NLRB,* No. 15-1245 (D.C. Cir. Mar. 24, 2017).

120.  Indeed, when a confidentiality provision is interpreted to prevent employees from discussing working conditions, the NLRB has held that the rule is unlawful. *See, e.g., IRIS, U.S.A., Inc.,* 336 N.L.R.B. 1013, 2001 WL 1830731 (2001).

121.  In *Double Eagle Hotel Casino v. N.L.R.B*, 414 F.3d 1249, 1259-60 (10th Cir. 2005), the Tenth Circuit well-established that blanket prohibitions on employee discussions regarding working conditions were illegal.  In the instant case, the United Airlines policy of silencing employees is not merely "blanket," it is *universal*.  Thus, it is illegal.

122.  The NLRB decisions cited in this Complaint are cited only to highlight the universal legal principle forbidding the silencing of employees under the circumstances set forth in this Complaint, and to show the illegality of the generalized blanket policy against such ordered employee secrecy under corporate threat in the United States.

123.  The federal D.C. Circuit has adopted the same framework under the NLRA (which, again, is cited here only to show the illegality of the generalized blanket policy against such required employee secrecy in the State of Colorado and the United States). In *Aroostook County Ophthalmology Ctr.,* 81 F.3d 209, 212 (D.C. Cir. 1996).the court stated that "[t]here can be no quarrel with the claim that, under the NLRA, employees are generally free to discuss the terms and conditions of their employment." In *Brockton Hospital v. NLRB,* 294 F.3d 100, 107 (D.C. Cir. 2002), the court struck down a confidentiality rule because it limited employees' ability to discuss "wages, hours, and working conditions . . . ."

124.  In *Perez v. Los Angeles Community College District*, PERB Decision No. 2404 (December 24, 2014), the Public Employment Relations Board (PERB) determined that an instruction to an employee "not to contact any members of the faculty, staff or students" while on administrative leave pending a fitness-for-duty evaluation violated the California Educational Employment Relations Act ("EERA") because it interfered with the employee's exercise of protected rights. In so holding, PERB noted that it is a fundamental principle that employees have the right to discuss their working conditions with each other. The actions infringed on that right by forbidding all contact with other employees to discuss concerns.

Exhibit A
Notice of Removal

125.  Again, the policy of silencing witnesses is well-established as illegal under state and federal law throughout the United States.

126.  Likewise, a policy forbidding the silencing of witnesses and employees is impliedly established by Colorado law -- C.R.S. § 24-34-402.5.  Under said statute, employees cannot be terminated for their lawful communications and activities outside the workplace.  Such communications are protected by Colorado law.  C.R.S. § 24-34-402.5 well-establishes the pertinent policy forbidding such silencing of witnesses and employees.

127.  Again, the corporation did not express and has not expressed the specific basis or reasons for any such policy or order silencing employees, including plaintiff, and former employees in this case.  It is a general blanket command, as universally applied within the company without explanation of any special need, and thus is illegal on its face.

128.  The above-stated paragraphs are incorporated into the following Claims for Relief, which demonstrate, among other things, willful and wanton conduct and/or reckless disregard of the rights of plaintiff.

<u>FIRST CLAIM FOR RELIEF</u>

129.  The defendant breached Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and C.R.S. § 24-34-301 *et seq*. by its adverse actions against plaintiff as follows: failure to promote, imposition of an adverse discipline ("Documented Verbal

28

Warning"), determination that plaintiff was and is a *persona non grata* stifling her career, failure to complete timely investigations, and refusal to provide names of witnesses so that plaintiff could contact and talk with them to find evidence supporting her claims of discrimination and retaliation and to defend against corporation actions against her.

130.  All those company managers who participated in these actions against plaintiff (and all actions against her and other employees and former employees described in this Complaint) did so as agents or employees of the defendant, and therefore their actions are those of the defendant.

131.  Plaintiff seeks to recover all available statutory relief as provided for by Title VII of the Civil Rights Act and C.R.S. § 24-34-301 *et seq.*

## SECOND CLAIM FOR RELIEF

132.  The defendant breached Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and C.R.S. § 24-34-301 *et seq.* by imposing and implementing a mechanism of discrimination and retaliation, namely by issuing undifferentiated and general blanket orders and policies that employees are forbidden to discuss investigations of discrimination, retaliation and adverse actions and/or the underlying facts, or adverse treatment, circumstances and/or investigations with anyone else both while workers were and are employed at the corporation, and after they no longer work at the corporation.  Thus, victims, including plaintiff, were and

Exhibit A
Notice of Removal

are denied their right to gather witnesses and evidence to support their claims of discrimination, retaliation and other adverse treatment, or to defend against company accusations.

133. Plaintiff seeks a declaratory judgment to the above effect and a permanent injunction forbidding such illegal conduct in the State of Colorado and the United States, as well as all available statutory relief.

134. For the requested permanent injunction, plaintiff can show that she has achieved or will achieve success on the merits of the case; she has suffered irreparable harm which will continue against herself and other victims in the State of Colorado and United States, and the threatened injury to her will result unless the injunction is issued; the threatened injury outweighs the harm that the injunction may cause to the defendant; and the injunction, if issued, will not adversely affect the public interest. *See Langlois v. Board of County Com'rs of County of El Paso*, 78 P.3d 1154, 1158 (Colo.App. 2003).

<u>THIRD CLAIM FOR RELIEF</u>

135. By the aforesaid acts, and pursuant to the defendant's illegal conduct under the Railway Labor Act, 45 U.S.C. § 151, plaintiff seeks a declaration and permanent injunctive relief striking the defendant's blanket, undifferentiated and general order and policy that employees were and are forbidden to discuss matters under investigation or that had been investigated (including as relate to discrimination,

Exhibit A
Notice of Removal

retaliation <u>or adverse treatment</u>), and/or the underlying facts, circumstances and/or investigations with others both while workers are employed there, and even after they no longer work at the defendant. Plaintiff seeks a declaratory judgment and permanent injunctive relief to that effect, as well as damages and remedies provided by the statute. She can meet the same standards for injunctive relief as are set *supra*. Injunctive relief is sought as to such wrongful conduct both in the State of Colorado and the United States.

FOURTH CLAIM FOR RELIEF

136. By the aforesaid acts, the defendant corporation violated the policies of the United States and State of Colorado by issuing undifferentiated and general orders and policies that employees are forbidden to discuss matters of discrimination, retaliation and adverse actions and/or the underlying facts, or adverse treatment, circumstances and/or investigations with anyone else both while workers are employed there, and after they no longer worked there. Thus, victims, including plaintiff, were and are denied their right to gather witnesses and evidence to support their claims of discrimination, retaliation and adverse treatment or defend against company accusations. Plaintiff seeks a declaratory judgment and permanent injunctive relief to that effect and as to said violation of the law, as well as all available relief, including award of attorneys' fees and costs, for violation of public policies both in the State of Colorado and the United States. She meets the

Exhibit A
Notice of Removal

same standards for injunctive relief as are set forth above.

<u>PRAYER AND JURY DEMAND</u>

WHEREFORE, plaintiff respectfully moves this court and prays for:

(a)  a declaratory judgment and injunctive relief both in the State of Colorado and the United States finding that the defendant has violated the above-described statutes and committed the above-described wrongs, including breaches of public policy, by the aforesaid acts against plaintiff and other victims in the State of Colorado and United States;

(b)  a declaratory judgment and injunctive relief finding that the policies, commands, orders and directives of the defendant described *supra* violated both statutory law as cited as well as constituted violation of policies of the United States and State of Colorado forbidding the silencing of employees and witnesses, as described in this Complaint;

(c)  promotions and professional advancement within the defendant corporation as have been denied to plaintiff, with all attendant benefits and other amenities that she would have received were these illegal actions not taken against her;

(d)  all compensation, back pay, equal pay, front pay and benefits that plaintiff was denied because of the defendant's acts, in a sum to be determined by the court and jury;

(e)  liquidated and compensatory damages, including for past, present and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in a sum to be determined by the court and jury;

(f)  exemplary or punitive damages in a sum to be determined by the court and jury;

(g)  legal fees, disbursements, expert fees, and costs of this action;

(h)  all legal interest on sums awarded;

(i)  all issues so triable to be decided by a jury;

(j)  such other relief as the court may deem appropriate.

RESPECTFULLY SUBMITTED,

s/John R. Olsen
John R. Olsen, Reg. No. 9475
357 S. McCaslin Blvd.
Louisville, CO 80027
(303) 828-5220
Attorney for Plaintiff

February 15, 2021

Plaintiff's Address:
5785 S. Jericho Way
Centennial, CO 80015

33